IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICK'S CABARET INTERNATIONAL, INC., *et al.*, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. H-11-3716 |
| INDEMNITY INSURANCE CORPORATION, Defendant. | § § § § | |

# **MEMORANDUM AND ORDER**

This insurance coverage case is before the Court on the Motion to Dismiss [Doc. # 8] filed by Defendant Indemnity Insurance Corporation ("IIC"), to which Plaintiffs Rick's Cabaret International, Inc. and RCI Internet Services, Inc. (collectively, "Rick's") filed a Response [Doc. # 9], and Defendant filed a Reply [Doc. # 11]. Also pending is Plaintiffs' Motion for Costs and Fees for Service of Complaint ("Motion for Costs") [Doc. # 12], to which Defendant filed a Response [Doc. # 17], and Plaintiffs filed a Reply [Doc. # 18]. Having reviewed the full record and applicable legal authorities, the Court **grants** the Motion to Dismiss and **grants** the Motion for Costs in this amount of **$1,005.00**.

## I.     BACKGROUND

Rick's is insured under a primary and umbrella comprehensive general liability policy issued by IIC (the "Policy").  Rick's was sued in two class action lawsuits.  In *Lusskin v. Rick's Cabaret International, Inc.* (the "Lusskin Lawsuit") and *Kertesz v. Rick's Cabaret International, Inc., et al.* (the "Kertesz Lawsuit"), both pending in the United States District Court for the Southern District of Florida, it is alleged that Rick's sent numerous advertising text messages to cellular telephones without the cellular subscribers' consent.

Rick's submitted a claim for coverage under the Policy for the two class action lawsuits in Florida.  IIC denied coverage, asserting that the claims fell within the "Field of Entertainment" Exclusion and the "Legal Liability" Exclusion in the Policy.[1]

Rick's filed this lawsuit seeking a declaratory judgment that there is coverage under the Policy and that IIC owes Rick's a duty to defend in the two class action lawsuits.  Rick's also asserted a breach of contract claim based on IIC's denial of coverage and a claim that IIC violated the Texas Prompt Payment of Claims Act based on the allegation that "IIC has delayed payment of Plaintiff's claim."  *See* Complaint [Doc. # 1], ¶ 42.

---

[1]     The specific allegations in the two class action lawsuits and the specific provisions of the exclusions on which IIC relies are discussed more fully in the Analysis section of this Memorandum and Order.

IIC filed its Motion to Dismiss, arguing that the Complaint and the documents attached thereto establish as a matter of law that Rick's has failed to state a claim upon which relief can be granted. The Motion to Dismiss has been fully briefed, each party treating the duty to defend issue as dispositive of the entire lawsuit. Clearly, if the Exclusions apply as asserted by IIC, there has been no breach of the insurance contract and no violation of the Texas Prompt Payment of Claims Act.

## II.    STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). In this case, Plaintiffs attached to the Complaint copies of the Policy and both underlying lawsuits.

The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009). When there are well-pleaded factual allegations, a court

should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950.

### III.   STANDARD FOR DUTY TO DEFEND ANALYSIS

An insurer owes its insured a duty to defend a lawsuit against the insured if a plaintiff in the underlying lawsuit asserts factual allegations against the insured that potentially support a covered claim. *See Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)). In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined by the plaintiff's pleadings in the underlying lawsuit. *Id.* at 491. The focus is on the factual allegations in the underlying complaint, not on the legal theories. *See id.* at 495 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).

The Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally." *Id.* at 491. "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Id.* If the complaint in the underlying lawsuit clearly alleges only facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)

(citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

Generally, Texas law considers the duty-to-indemnify question justiciable only after the underlying suit is concluded, unless "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997). Here, if the exclusions apply to negate the duty to defend as asserted by IIC, there is likewise no duty to indemnify.

## IV. ANALYSIS

### A. Lusskin Lawsuit

Bret Lusskin, Jr., on behalf of himself and all others similarly situated, states correctly in the Lusskin Lawsuit that the Federal Communication Commission ("FCC") is the agency vested with authority to issue regulations implementing the TCPA. *See* Lusskin Class Action Complaint, Exh. A to Complaint [Doc. # 1], ¶ 11. Lusskin notes that, under the TCPA and an FCC ruling, the burden is on the defendant caller to demonstrate that the cellular account holders gave express consent for the text messages. *See id.*, ¶ 12. In the Factual Allegations section of the Lusskin Class Action Complaint, Lusskin alleges that "[c]ontrary to federal regulations governing commercial messages to mobile telephones, none of the messages sent to Mr.

Lusskin's cellular telephone contained either a cost free telephone number to unsubscribe to [Rick's] text message campaign or an address of the entity sending the message." *Id.*, ¶ 32. Lusskin alleges that Rick's violated the TCPA by making unsolicited text calls using an automated telephone dialing system without the prior consent of the recipients. *Id.*, ¶¶ 43-45.

IIC argues that the TCPA claim in the Lusskin Lawsuit is not covered by the Policy because it falls within the Field of Entertainment Exclusion. That exclusion provides that the Policy does not apply to:

> any loss, claim, "suit," cost, expense, or liability for damages, directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to:
>
> * * * * *
>
> f.   Actual or alleged violation of United States Federal Communication Commission rules, regulations, interpretations, policies, statutes, laws or codes . . .

Policy, Exh. C to Complaint, p. 63 of 85.[2]

The Lusskin Lawsuit asserts a claim based on, involving, or related to the FCC regulations and interpretations though declaratory rulings. Lusskin alleges that the FCC has issued a declaratory ruling that interprets the TCPA to require the caller to

---

[2]   The page citations to the Policy refer to the page number as reflected on the Court's electronic docketing system ("ECF").

demonstrate that the recipients gave express consent for the text messages. *See* Lusskin Class Action Complaint, ¶ 12. The single claim in the Lusskin Lawsuit is based on Rick's sending text calls "without the prior express consent of the parties." *Id.*, ¶ 44. Consequently, the Lusskin Lawsuit falls within the Field of Entertainment Exclusion and IIC owes Rick's no duty to defend.

### B. Kertesz Lawsuit

Christopher Kertesz, individually and on behalf of a class of similarly situated individuals, alleges that he entered into an agreement with Rick's to receive up to eight (8) text messages each month. *See* Kertesz Class Action Complaint, Exh. B to Complaint, ¶ 14. Kertesz alleges that Rick's sent significantly more than eight text messages per month without Kertesz's consent, thereby violating the TCPA and breaching the agreement.

#### 1. TPCA Claim

Unlike the Lusskin Class Action Complaint, the Kertesz Class Action Complaint does not mention any FCC rules, regulations, or interpretations. The Field of Entertainment Exclusion, however, also excludes claims that are based on, involve, or relate to FCC statutes and laws. Although the FCC has no power to enact statutes or laws, the TCPA is an FCC statute to the extent that Congress granted the FCC regulatory and civil enforcement authority for the TCPA. *See* 47 U.S.C. § 227(b)(2)

(the FCC "shall prescribe regulations to implement the requirements of this subsection"); § 227(e)(5)(A) (any party that the FCC determines to have violated the TCPA is subject to a forfeiture penalty). To fail to construe the TCPA as an FCC statute would render the language "Federal Communications Commission . . . statutes" meaningless and superfluous. An insurance contract "should be interpreted as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transitional Learning Community at Galveston, Inc. v. United States Office of Personnel Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000); *see also Liberty Mut. Ins. Co. v. Am. Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1997) ("An interpretation that gives reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage."). As a result, the Court concludes that the TCPA claim in the Kertesz Lawsuit is based on, involves, and relates to an alleged violation of an FCC statute. Therefore, the claim falls within the Field of Entertainment Exclusion.

### 2. Breach of Contract Claim

The Kertesz Lawsuit includes a breach of contract claim. Specifically, Kertesz alleges that he entered into an agreement with Rick's to receive "up to" eight text

messages each month and that Rick's has intentionally and systematically exceeded that number. *See* Kertesz Class Action Complaint, ¶¶ 34-36.

The Legal Liability Exclusion in the Policy provides that the Policy does not apply to any claim "for breach or alleged breach of contract or agreement, whether written, oral, or implied, by any insured or additional insured." *See* Policy, p. 42 of 85. It is clear that the breach of contract claim in the Kertesz Lawsuit is a claim that Rick's breached a contract. Plaintiffs' argument that the provision in the Legal Liability Exclusion is ambiguous because it is unclear whether it excludes claims based on an alleged breach by the insured or only to *claims* made by the insured is without merit. The exclusion applies to any claim for breach of contract by any insured, with the phrase "whether written, oral, or implied" set apart by commas to describe the types of contracts covered by the exclusion. Additionally, it would be nonsensical to construe the Legal Liability Exclusion to apply only to breach of contract claims *asserted by the insured*. In that situation, the insured would be the plaintiff asserting the claim. There would be no claim asserted against the insured, and the insured would need no defense for which IIC would have a duty that needed to be excluded. The Court concludes that the Legal Liability Exclusion is unambiguous and excludes breach of contract claims against the insured.

The TCPA claim in the Kertesz Lawsuit falls within the Field of Entertainment Exclusion and the breach of contract claim falls within the Legal Liability Exclusion. As a result, the Kertesz Lawsuit is not covered by the Policy and IIC owes Rick's no duty to defend.

## V. MOTION FOR COSTS AND FEES FOR SERVICE OF COMPLAINT

Plaintiffs requested that Defendant waive service and Defendant declined. Thereafter, Plaintiffs engaged a process server to obtain proper service on Defendant. Plaintiffs seek to recover expenses and fees in the amount of $7,996.00.

Rule 4(d)(2) provides that if a defendant in the United States fails, without good cause, to sign and return a waiver of service requested by the plaintiff in accordance with Rule 4(d)(1), the Court "must impose on the defendant" the expenses incurred in making service and the expenses, including reasonable attorney's fees, incurred in filing a motion to collect those expenses. *See* FED. R. CIV. P. 4(d)(2); *Wright v. Spindletop Films, L.L.C.*, __ F. Supp. 2d __, 2011 WL 3273125, *5 (S.D. Tex. 2011). Defendant concedes that Plaintiffs are entitled to recover those expenses and fees that are allowed by Rule 4(d)(2).

Plaintiffs are entitled to recover the ***expenses*** incurred in making service. Plaintiffs incurred expenses in the amount of $115.00 for process service fees. Defendant objects to this amount because Plaintiffs paid two process servers. The

Court finds that the $115.00 expense in this case was reasonable. The first process server was paid $60.00 to serve IIC at its home office in Maryland. When several attempts to perfect service at the Maryland office were unsuccessful, Plaintiffs paid a second process server $55.00 to obtain service on a registered agent for IIC in Florida.

Plaintiffs are not, however, entitled to recover their legal fees incurred in obtaining service. *See* FED. R. CIV. P. 4(d)(2)(A). Unlike Rule 4(d)(2)(B), which provides for the recovery of "reasonable expenses, including attorney's fees," Rule 4(d)(2)(A) provides only for the recovery of expenses. As a result, Plaintiffs are not entitled to recover the $1,658.00 in legal fees for services rendered to perfect service on IIC.

Plaintiffs are entitled to recover "reasonable expenses, including attorney's fees," incurred in preparing the motion to recover the Rule 4(d)(2)(A) expenses. Plaintiffs have presented evidence that they incurred $1,669.00 in legal fees in preparing this motion. Plaintiffs' attorney spent one hour on the motion, billed at the rate of $510.00 per hour. The attorney's paralegal spent 6.1 hours working on the motion, billed at the rate of $190.00 per hour. Defendant concedes that legal fees incurred in preparing the motion are recoverable, but argues that the amount is unreasonable. The Court finds that the amount requested is unreasonably high.

Plaintiffs' counsel correctly limited his own work on the motion, and the majority of the work was performed by a paralegal at a significantly lower billing rate. The Court finds that 6.1 hours by a paralegal for the preparation of a straightforward, two-page motion is unreasonable. The Court finds that two hours of paralegal time would have been more than adequate. As a result, the Court concludes that Plaintiffs are entitled to recover for one hour of the attorney's time at $510.00 per hour and two hours of paralegal time at $190.00 per hour, for a total of $890.00, is reasonable for preparing the Motion for Costs and Fees.

Additionally, Plaintiffs seek to recover the legal fees incurred in preparing their Reply. Rule 4(d)(2)(B) allows recovery of the reasonable expenses, including attorney's fees, of "any motion" required to collect the expenses of service. Plaintiffs cite no legal authority for their argument that legal expenses and fees are recoverable for submitting an optional reply brief, and this Court's independent research has revealed none. *Cf. Sandoval v. Little Concessions, LLC*, 2011 WL 780874, *2 (N.D. Ill. Feb. 28, 2011) (allowing recovery for 2.7 hours at $250.00 per hour for "drafting, revising, and filing the motion"); *Royal Travel, Inc. v. Shell Mgmt, Hawaii, Inc.*, 2010 WL 167954, *8 (D. Haw. Jan. 15, 2010) (allowing recovery of $525.00 in fees "for the preparation of the Motion"). Moreover, the Court finds that the amount requested, $4,915.00, is unreasonable. The amount is almost ***three times*** the amount requested

for preparing the original motion, which itself was unreasonably high. Consequently, the Court denies the request for recovery of the legal fees incurred in preparing Plaintiffs' Reply.

Plaintiffs are entitled to recover $155.00 in expenses incurred in obtaining service and $1,669.00 in legal fees incurred in preparing the Motion for Costs and Fees for Service of Complaint, for a total of $1,005.00.

## VI.  CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that the claims in the Lusskin Lawsuit fall within the Field of Entertainment Exclusion and the claims in the Kertesz Lawsuit fall within the Field of Entertainment and the Legal Liability Exclusion. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 8] is **GRANTED**.  It is further

**ORDERED** that Plaintiffs' Motion for Costs and Fees for Service of Complaint [Doc. # 12] is **GRANTED** in the amount of **$1005.00**.

The Court will issue a separate Dismissal Order.

SIGNED at Houston, Texas, this **24th** day of **January, 2012**.

_____
Nancy F. Atlas
United States District Judge